**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| JASON C. FRITTON, MAREA GIBSON, BRIAN W. MOTZENBEEKER, DAWN DUFF, and CHRISTOPHER SHEARMAN, individually and on behalf of all others similarly situated, | Civil Action No. 22-cv-00415 |
| Plaintiffs, | Judge Jeffrey M. Bryan |
| | Mag. Judge Tony N. Leung |
| v. | |
| TAYLOR CORPORATION, the BOARD OF DIRECTORS OF TAYLOR CORPORATION, the FIDUCIARY INVESTMENT COMMITTEE, and JOHN DOES 1-30, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS,
APPROVAL OF CLASS NOTICE,
AND SCHEDULING OF A FAIRNESS HEARING**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF CLAIMS .................................................................................. 2

III.  LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS .............. 2

  A.  Description of the Action ............................................................................... 2

  B.  Discovery .......................................................................................................... 4

  C.  Settlement Negotiations ................................................................................. 5

IV.   THE AGREEMENT ............................................................................................. 6

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT 8

  A.  Legal Standard ................................................................................................ 8

  B.  The Settlement is Fair, Reasonable, and Adequate ................................... 9

    1.  The Merits of the Case Weigh In Favor of the Terms of the Settlement ...... 9

    2.  Defendants' Financial Condition ................................................................. 11

    3.  Complexity and Expense of Further Litigation ........................................... 11

    4.  There is No Known Opposition to the Settlement ....................................... 13

VI.   THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS ......... 16

  A.  Rule 23(a)'s Requirements are Satisfied ................................................... 17

    1.  The Class is Sufficiently Numerous ............................................................ 17

    2.  Common Questions of Law and Fact Abound ............................................. 17

    3.  Plaintiffs' Claims are Typical of the Class ................................................. 19

    4.  Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class ................................................................................................................. 20

  B.  The Settlement Class Satisfies the Requirements of Rule 23(b) .............. 23

    1.  Certification Under Rule 23(b)(1) is Appropriate ...................................... 24

    2.  Certification is Also Appropriate Under Section 23(b)(1)(A) ..................... 25

VII.  THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ..... 26

VIII. CONCLUSION ................................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Adams v. Cradduck,*
2016 WL 7664135 (W.D. Ark. Nov. 17, 2016) ...................................................... 8, 14, 15

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................................... 24, 25

*In re Aquila ERISA Litig.,*
237 F.R.D. 202 (W.D. Mo. 2006) .......................................................................... 18

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ....................................................... 24

*Bonetti v. Embarq Mgmt. Co.,*
715 F. Supp. 2d 1222 (M.D. Fla. 2009) ............................................................... 16

*Bowers v. BB&T Corp.,*
2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ...................................................... 24

*Bredthauer v. Lundstrom,*
2012 WL 2904422 (D. Neb Oct. 12, 2012).......................................................... 20, 21

*Caligiuri v. Symantec Corp.,*
855 F.3d 860 (8th Cir. 2017) ............................................................................... 14

*Cassell v. Vanderbilt Univ.,*
2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018).................................................... 24

*In re Charter Commc'ns,*
2005 WL 4045741(E.D. Mo. June 30, 2005) ....................................................... 11

*Clark v. Duke Univ.,*
2018 WL 1801946 (M.D.N.C. April 13, 2018)...................................................... 24

*Cooper v. Integrity Home Care, Inc.,*
2018 WL 3468372 (W.D. Mo. July 18, 2018) ...................................................... 11,13

*Cryer v. Franklin Templeton Res., Inc.,*
2017 WL 4023149 (N.D. Cal. July 26, 2017) .................................................................. 24

*Cullan and Cullan LLC v. M-Qube, Inc.,*
2016 WL 5394684 (D. Neb. Sept. 27, 2016)...................................................... 12, 16, 26

*DeBoer v. Mellon Mortg. Co.,*
64 F.3d 1171 (8th Cir. 1995) ......................................................................................... 10

*Denard v. Transamerica Corp.,*
2016 WL 3554978 (N.D. Iowa June 24, 2016) .............................................................. 15

*Grunin v. Int'l House of Pancakes,*
513 F.2d 114 (8th Cir. 1975) .................................................................................... 10, 26

*Hashw v. Dep't Stores Nat'l Bank,*
182 F.Supp.3d 935 (D. Minn. 2016) ................................................................................ 9

*Henderson v. Emory Univ.,*
2018 WL 6332343 (N.D. Ga. Sept. 13, 2018).................................................................. 24

*Hochstadt v. Boston Scientific Corp.,*
708 F.Supp.2d 95 (D. Mass. April 27, 2010) ................................................................. 23

*In re: Janney Montgomery Scott LLC Fin. Consult. Litig.,*
No., 2009 WL 2137224 (E.D. Pa. July 16, 2009) ........................................................... 27

*Jones v. NovaStar Fin., Inc.,*
257 F.R.D. 181 (W.D. Mo. 2009) ............................................................................. 24, 25

*Karg v. Transamerica Corp.,*
2020 WL 3400199 (N.D. Iowa Mar. 25, 2020)........................................................ 19, 21

*Koch v. Dwyer,*
No. 98-CV-5519, 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001) ...................................... 25

*Krueger v. Ameriprise,*
2015 WL 4246879 (D. Minn. July 13, 2015).................................................................. 12

*Krueger v. Ameriprise Fin,, Inc.,*
304 F.R.D. 559 (D. Minn. 2014) .................................................................................... 20

*Kruger v. Novant Health, Inc.,*
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ................................................... 12, 14, 15

*Lechner v. Mut. of Omaha Ins. Co.,*
No. 8:18CV22, 2020 WL 5982022 (D. Neb. Oct. 8, 2020) ................................................. 9

*Lipari-Williams v. Missouri Gaming Co., LLC,*
339 F.R.D. 515 (W.D. Mo. 2021) ................................................................................... 19

*Mass. Mut. Life Ins. Co.,*
473 U.S. 134 (1985) ...................................................................................................... 26

*Mullane v. Central Hanover Bank and Trust Co.,*
339 U.S. 306 (1950) ...................................................................................................... 26

*Netzel v. West Shore Grp.,*
2017 WL 1906955 (D. Minn. May 8, 2017) ...................................................................... 16

*Paschal v. Child Dev., Inc.,*
2014 WL 112214 (E.D. Ark. Jan. 10, 2014) ...................................................................... 23

*Paxton v. Union Natl' Bank,*
688 F.2d 552 (8th Cir. 1982) .......................................................................................... 20

*Petrovic v. Amoco Oil Co.,*
200 F.3d 1140 (8th Cir. 1999) ..................................................................................... 9, 26

*Powers v. Credit Mgmt. Servs.,*
776 F.3d 567 (8th Cir. 2015) .......................................................................................... 10

*Prof. Firefighters Ass'n of Omaha Local 385 v. Zalewski,*
678 F.3d 640 (8th Cir. 2012) ............................................................................................ 9

*Ramsey v. Sprint Comm. Co., L.P.,*
2012 WL 6018154 (D. Neb. Dec. 3, 2012) ....................................................................... 10

*Rodriguez v. Hy-Vee, Inc.,*
2023 WL 4358705 (S.D. Iowa Apr. 26, 2023) ................................................................... 20

*Rozo v. Principal Life Ins. Co.,*
2017 WL 2292834 (S.D. Iowa May 12, 2017) ................................................................... 24

*Sacerdote v. New York Univ.,*
2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) .................................................... 23

*In re Schering Plough Corp. ERISA Litig.,*
589 F.3d 585 (3d Cir. 2009) ......................................................................... 18

*Schoenbaum v. E.I. Dupont De Nemours and Co.,*
2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ................................................... 14

*Sims v. BB&T Corp.,*
2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ................................................ 20

*Spano v. The Boeing Co.,*
*2016 WL 3791123 (S.D. Ill. March 31, 2016)* ................................................. 15

*Speer v. Cerner Corp.,*
2016 WL 5444648 (W.D. Mo. Sept. 27, 2016) ................................................ 17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
463 F.3d 646 (7th Cir. 2006) .......................................................................... 9

*Tibble v. Edison Int'l,*
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ................................................ 12

*Tracey v. Mass. Inst. Tech.,*
2018 WL 5114167 (D. Mass. Oct. 19, 2018) .................................................. 24

*Tussey v. ABB, Inc.,*
2017 WL 6343803 (W.D. Mo. Dec. 12, 2017).......................................... 12, 23

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.,*
716 F.3d 1057 (8th Cir. 2013) ................................................................... 8, 13

*Vellali v. Yale Univ.,*
2019 WL 5204456 (D. Conn. Sept. 24, 2019).................................................. 24

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ............................................................................... 17, 18

*Wildman v. Am. Century Servs., LLC,*
2017 WL 6045487 (W.D. Mo. Dec. 6, 2017)................................ 10, 17, 23, 24

*In re Williams Cos. ERISA Litig.*,
231 F.R.D. 416 (N.D. Okla. 2005) .................................................................. 18

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
396 F.3d 922 (8th Cir. 2005) ............................................................... 9, 11, 13

*Zilhaver v. UnitedHealth Grp., Inc.*,
646 F. Supp. 2d 1075 (D. Minn. 2009) .......................................................... 25

**Statutes**

Fed. R. Civ. P. 23 .............................................................................. 18, 22, 25, 27

Fed. R. Civ. P. 23(a) ............................................................................................ 18

Fed. R. Civ. P. 23(a)(1) ....................................................................................... 17

Fed. R. Civ. P. 23(a)(2) ....................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 20

Fed. R. Civ. P. 23(b)(1) ............................................................................... Passim

Fed. R. Civ. P. 23(b)(1)(A) ................................................................... 23, 25, 26

Fed. R. Civ. P. 23(b)(1)(B) ................................................................... 24, 25, 26

Fed. R. Civ. P. 23(b)(2) ....................................................................................... 26

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 24

Fed. R. Civ. P. 23(c)(2) ....................................................................................... 26

Fed. R. Civ. P. 23(e) ................................................................................ 8, 13, 27

Fed. R. Civ. P. 23(g) ................................................................................. 1, 21, 22

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................... 21, 22

Fed. R. Civ. P. 23(g)(1)(B) .................................................................................. 22

28 U.S.C. §§ 1332(d) ........................................................................................... 27

Plaintiffs Jason C. Fritton, Marea Gibson, Brian W. Motzenbeeker, Dawn Duff, and Christopher Shearman (collectively, "Plaintiffs"), former participants in the Taylor Corporation 401(k) Plan (the "Plan"), respectfully submit this Memorandum of Law in support of their unopposed[1] motion for entry of an Order: (1) preliminarily approving the proposed Settlement documented in the Stipulation of Settlement ("Settlement" or "Stipulation")[2]; (2) preliminarily certifying the below-defined Class; (3) appointing Plaintiffs' Counsel as Class Counsel under FED. R. CIV. P. 23(g); (4) approving the manner of notifying the Settlement Class of the Settlement; (5) preliminarily approving the Plan of Allocation; and (6) setting a date for a Fairness Hearing.

## I.    INTRODUCTION

After vigorous advocacy and negotiation, Plaintiffs, individually and on behalf of all others similarly situated, and Defendants[3] (together with the Plaintiffs, the "Parties") entered into a Stipulation to resolve Plaintiffs' claims under the Employee Retirement Income Security Act of 1947 ("ERISA"), as alleged in their Amended Complaint ("AC" or "Amended Complaint") (ECF No. 50).

---

[1] Defendants do not oppose this Motion solely for purposes of facilitating the Settlement.

[2] The Stipulation is attached as Exhibit 1 to the Declaration of Eric Lechtzin in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement ("Lechtzin Decl."). Undefined capitalized terms herein have the same meaning as in the Stipulation.

[3] "Defendants" refers collectively to Taylor Corporation ("Taylor" or the "Company"), the Board of Directors of Taylor Corporation (the "Board"), and the Fiduciary Investment Committee (the "Committee").

After several weeks of arms' length negotiations, facilitated by a private mediator, the Parties agreed to a Settlement of $485,000, and the Parties have negotiated the specific terms of the Stipulation and present it now for the Court's preliminary approval.

## II.    SUMMARY OF CLAIMS

Plaintiffs, individually and as representatives of a putative class, brought the Action in their capacities as former participants in the Plan against Defendants. Plaintiffs allege that Defendants violated ERISA § 404 as further described below. In particular, Plaintiffs claim that Defendants did not use a prudent process in the selection of the investment options in the Plan. Defendants deny any liability or wrongdoing.

## III.    LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS

### A.    Description of the Action

On February 14, 2022, Plaintiffs commenced this action by filing a class action complaint in this Court. (ECF No. 1.) Plaintiffs alleged, *inter alia*, that throughout the putative class period (February 14, 2016 through the date of Preliminary Approval), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees where lower-cost share class of identical funds – differing only in cost – were available to the Plan. ¶¶ 82-96, 100-109. Plaintiffs alleged that if there had been a prudent process in place, these funds would have been replaced with the less expensive share classes as early as the beginning of the Class Period. *Id.* Plaintiffs also alleged that Defendants failed to switch from mutual fund versions of the Plan's suite of T. Rowe Price target-date funds ("TDFs") to identical lower-cost CIT versions of such investments. ¶¶ 95-99. Plaintiffs also alleged Defendants imprudently retained the underperforming

2

Victory Small Cap Value fund. ¶¶ 110-113. In addition, Plaintiffs alleged the Plan suffered losses due to unreasonably high recordkeeping fees, which Plaintiffs alleged averaged $83.37 per participant per year, when the Plan could have negotiated recordkeeping fees for no more than $20 to $35 per participant. ¶¶ 60-81.

On April 15, 2022, Defendants filed a Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6). (ECF No. 21.) On May 31, 2022, Plaintiffs filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and Defendants filed a Reply. (ECF No. 33-34, 39.)

On December 12, 2022, the Court issued an Opinion and Order granting Defendants' Motion to Dismiss. (ECF No. 49.) The Court found that Plaintiffs plausibly alleged Article III injury only in connection with their excessive-recordkeeping-expenses claim, but that the recordkeeping claim failed on its merits. The Court gave Plaintiffs an opportunity to amend their complaint, and on January 11, 2023, Plaintiffs filed a First Amended Class Action Complaint ("FAC"). (ECF No. 50.) Thereafter, Defendants filed a Motion to Dismiss the FAC on January 25, 2023, which was fully briefed. (ECF Nos. 54-56, 58-59.)

On August 21, 2023, the Court issued an Opinion and Order granting, in part, and denying, in part, Defendants' Motion to dismiss Plaintiffs' FAC. (ECF No. 66.) The Court found that Plaintiffs plausibly alleged a breach of the fiduciary duty of prudence claim based on Defendants' selection of more expensive retail shares classes instead of institutional share classes for certain funds. *Id*. The Court also denied Defendants' motion with respect to Plaintiffs' derivative failure to monitor claim. *Id*. The Court dismissed

Plaintiffs' claims that Defendants imprudently failed to consider the lower-cost CIT versions of the TDFs and alleging imprudent selection and retention of funds with excessive management fees. *Id*. The Court also dismissed Plaintiffs' claim that Defendants imprudently retained the underperforming Victory Small Cap Value fund. *Id*. Plaintiffs' recordkeeping claim was dismissed because the FAC did not provide sufficient allegations that the fees were unreasonably high. *Id*. Finally, the Court dismissed without prejudice Plaintiffs' claim that Defendants breached their duty of loyalty. *Id.* Defendants filed their Answer and Affirmative Defenses to the FAC on September 5, 2023. (ECF No. 67.)

On October 10, 2023, the Parties filed a Rule 26(f) Report. (ECF No. 69.) The Court entered a Pretrial Scheduling Order on October 26, 2023. (ECF No. 71.) On October 26, 2023, the Court held a pretrial conference and discussed with the Parties, among other matters, the possibility of settlement. On October 26, 2023, the Court ordered the Parties to complete mediation with Robert A. Meyer of JAMS by February 2024. (ECF No. 71.)

### B.    Discovery

In October 2023, the parties exchanged Rule 26(a)(1) disclosures. Lechtzin Decl. at ¶ 7. On November 1, 2023, Plaintiffs served their first sets of document requests and interrogatories on Defendants, and Defendants responded to each on December 1, 2023. *Id*. On December 4, 2023, Defendants served their first sets of document requests and interrogatories on each named Plaintiff, and Plaintiffs timely responded to each on January 17, 2024. *Id*. at ¶ 8. Defendants provided Plaintiffs with extensive relevant documentation, including meeting minutes and materials considered by the Fiduciary Investment

Committee. *Id*. at ¶ 9. Plaintiffs retained an expert who calculated a damage estimate based on Plaintiffs' claims in the case. *Id*. at ¶ 10.

### C.    Settlement Negotiations

On January 30, 2024, the Parties participated in a full-day zoom mediation before Robert A. Meyer of JAMS. Lechtzin Decl. at ¶ 11. Plaintiffs' counsel submitted a mediation statement and participated in the mediation. *Id*. After reviewing all of the relevant information, Plaintiffs determined Defendants' failure to utilize the lowest-cost share classes available to the Plan resulted in damages estimated at $5,108,683.[4] *Id*. at ¶ 13.

Defendants disagreed with Plaintiffs' calculation of damages and defended their decision to offer investment options with revenue sharing arrangements, which had higher gross expense ratios than share classes without revenue sharing, because all revenue sharing was credited back to the Plan and used to pay for recordkeeping and other administrative services, and any excess revenue sharing was distributed back to participants. Lechtzin Decl. at ¶ 15. Based on these credits, Defendants would have demonstrated that the net expense ratios of the funds with revenue sharing was actually lower than the least expensive share class that did not provide revenue sharing.

Although the parties did not reach an agreement at the mediation, negotiations facilitated by Mr. Meyer continued during the ensuing weeks and, on February 28, 2024,

---

[4] Plaintiffs also estimated – using a $50 per participant recordkeeping and administration fee as a reasonable rate, that losses to the Plan through 2022 were $2,148,042 before pre-judgment was added. However, as discussed above, this claim was dismissed and therefore had minimal value. *Id*. at ¶ 14.

the Parties reached an agreement in principle to resolve Plaintiffs' claims and those of the Class. Thereafter, the Parties negotiated the detailed terms of the Stipulation and exhibits thereto, for which Plaintiffs now seek preliminary approval. *Id.* at ¶ 12.

## IV.    THE AGREEMENT

The Settlement establishes a Settlement Amount of $485,000 as compensation to the Settlement Class. Under the terms of the Stipulation, within thirty (30) calendar days after the Date of Preliminary Approval, Defendants and/or their insurer shall deliver $30,000 of the Settlement Amount to a non-interest-bearing FDIC-insured account identified by Class Counsel to cover the initial Settlement Administrative Expenses and the costs of sending Notice to the Class. (Stipulation ¶ 12.) Within thirty (30) calendar days after Complete Settlement Approval such that the Settlement has become Final, Defendants and/or their insurance carrier shall deliver the remaining balance ($455,000) of the Settlement Amount to the Settlement Account. (*Id*.) The Settlement Fund will be used to pay Settlement Administration Expenses, Class Counsel's fee and expense award, and the Plaintiffs' case contribution awards if awarded by the Court. (*Id*. ¶ 14.) The Net Settlement Fund consists of the Settlement Fund less these amounts and less the payment of any taxes or other charges allowed against the Settlement Fund. (*Id*.) The Settlement Administrator will be responsible for calculating the amounts payable to Members of the Settlement Class pursuant to the Plan of Allocation based on information to be provided by the Plan's Recordkeepers. (*Id*. ¶ 26).

For Members of the Settlement Class who have an open account in the Plan as of the date of entry of the Final Approval Order, the distribution will be made directly into

his or her account. (*Id*. ¶ 27(a)). Members of the Settlement Class who no longer have an account in the Plan as of the date of the Final Approval Order, and Members of the Settlement Class who do not have an account with the Plan with a balance greater than $0 as of the date of the Final Approval Order, shall receive an Election Form with their Class Notice. (*Id*. ¶ 27(b)). The Election Form shall provide these Members of the Settlement Class with the option to select a distribution either by check or tax deferred deposit into an account of their choosing. (*Id*.) In the event no election is made, or the Election Form is not returned to the Settlement Administrator by the deadline imposed in the Election Form, the default payment method shall be by check. (*Id*.) The Stipulation does not provide for any "reversion" of the Settlement Fund to Defendants or any of their affiliates.

No later than twenty-eight (28) calendar days prior to the final fairness hearing, Class Counsel will apply to the Court for a collective award of attorneys' fees and reimbursement of litigation expenses. (*Id*. ¶ 23.) Class Counsel will petition the Court for an award of attorney's fees not to exceed thirty percent (30%) of the Settlement Amount, plus reimbursement of litigation expenses. Lechtzin Decl. at ¶ 16. Additionally, Class Counsel may apply to the Court for case contribution awards to Plaintiffs Jason C. Fritton, Marea Gibson, Brian W. Motzenbeeker, Dawn Duff, and Christopher Shearman in an amount not to exceed $5,000 per Plaintiff. (Stipulation ¶ 24.)

Defendants will select an Independent Fiduciary to approve and authorize the settlement on behalf of the Plan and determine if the Settlement is reasonable and fair. (*Id*. ¶¶ 19, 30(b)). The fees and expenses of the Independent Fiduciary, and employees, attorneys, consultants, and advisors retained or employed by the Independent Fiduciary,

not to exceed $15,000, are part of Settlement Administration Expenses and will be paid

from the Settlement Fund. (*Id.* ¶ 19.) However, if for any reason the Independent Fiduciary

Fees Amount exceeds $15,000, one half (1/2) of the excess will be paid from the Settlement

Fund, and one half (1/2) of the excess will be paid by Defendants. (*Id.*)

## V.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.    Legal Standard

A court's review of a proposed class action settlement is a two-step process. "At the

first stage, the parties submit the proposed settlement to the Court, which must make a

'preliminary fairness evaluation.'" *Adams v. Cradduck*, 2016 WL 7664135, at *3 (W.D.

Ark. Nov. 17, 2016) (internal citations omitted). For a court to preliminarily approve a

settlement, the settling parties "must provide the court with information sufficient to enable

it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e).

To order that notice should be given, the court must determine that it will likely be able to

approve the settlement at the final approval stage. Fed. R. Civ. P. 23(e)(1)(B).

To grant final approval, a court must determine that a settlement is "fair, reasonable

and adequate." *In re Uponor, Inc*., 716 F.3d 1057, 1063 (8th Cir. 2013). The Eighth Circuit

directs courts to consider the following factors in evaluating if it should approve a class

action settlement:

> (1) the merits of the plaintiff's case weighed against the terms of the
> settlement; (2) the defendant's financial condition; (3) the complexity and
> expense of further litigation; and (4) the amount of opposition to the
> settlement.

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). A district court has broad discretion in assessing the weight and applicability of these factors. *Prof. Firefighters Ass'n of Omaha Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir. 2012). As set forth below, the Settlement is fair, reasonable and adequate and should be preliminarily approved.

### B.     The Settlement is Fair, Reasonable, and Adequate

#### 1.     The Merits of the Case Weigh In Favor of the Terms of the Settlement

The "strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement" is the most important consideration in deciding whether a settlement is fair, reasonable, and adequate. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999) (citations and internal quotations omitted). "This is not a simple mathematical exercise with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Courts perform a "ballpark valuation." *Synfuel Techs.*, 463 F.3d at 463.

Here, following dismissal of several of Plaintiffs' claims, Class Counsel determined maximum potential damages to the Plan of approximately $5.1 million for their surviving claims. Lechtzin Decl. at ¶ 13. But this was the best-case scenario, which did not factor credits to the Plan from revenue sharing and it assumes the trier of fact would agree with Plaintiffs' expert's analysis of damages. *Id.* If the trier of fact were to agree with Defendants' analysis of damages, then damages could be zero dollars. *Id.*

9

In considering the Settlement's fairness, a court must consider the challenges that plaintiffs would face in prevailing on their claims. *See*, *e.g.*, *Ramsey v. Sprint Comm. Co., L.P.*, 2012 WL 6018154, at *3 (D. Neb. Dec. 3, 2012). In doing so, a court "does not try the case," but instead identifies the disputed factual and legal issues that make it less likely for the plaintiffs to receive a full recovery. *Id*. (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). "If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation." *Ramsey*, 2012 WL 6108154, at *3 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995)).

Here, Plaintiffs face significant hurdles to recovering their maximum estimated damages. As an initial matter, their maximum damages figure is contingent on the Court certifying a class. While courts have certified classes in similar ERISA cases (*see Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017)), class certification is not guaranteed. *See Powers v. Credit Mgmt. Servs.*, 776 F.3d 567, 570 (8th Cir. 2015) (noting the necessity of a "[r]igorous analysis" for a class to be certified). Defendants would be expected to oppose class certification on a numerous grounds.

Moreover, Defendants would likely argue that the Plan did not suffer any loss because the Plan offered the lowest net cost share class for the participants, considering the Plan's use of revenue sharing as the method to pay Plan fees. Thus, Plaintiffs faced a risk that they would be unable to establish the Defendants' liability, and, if able to do so, they faced the further likelihood that a trier of fact would find no damages. In light of these

risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for the Settlement Class. The Settlement will avoid the cost and expense of continued litigation and will provide immediate relief for the Settlement Class.

### 2. Defendants' Financial Condition

Taylor Corporation is a large company with enough assets to pay the Settlement. Lechtzin Decl. at ¶ 17. Accordingly, Plaintiffs did not discount the amount of the Settlement based on Defendants' ability to pay. *Id*. This factor supports preliminary approval of the Settlement. *See Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 WL 3468372, at *4 (W.D. Mo. July 18, 2018); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 933 (affirming approval of settlement because "there is no indication that (defendant's) financial condition would prevent it from raising the settlement amount.").

### 3. Complexity and Expense of Further Litigation

"The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement should be approved." *In re Charter Commc'ns*, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005).

Without a settlement, the action would proceed with merits discovery, expert discovery, motions relating to class certification and then summary judgment, as well as a trial and a possible appeal. *See Cooper*, 2018 WL 3468372, at *4 (finding the complexity and expense of further litigation factor supported the settlement's approval where the "case would likely involve additional motions relating to class certification, discovery, and summary judgment, as well as trial and appeal.")

Each stage would take time and, importantly, present additional risks that the Plaintiffs and Class members would receive less than the $485,000.00 that they are now being offered. The Settlement provides money to the Class *now*, instead of years in the future if the Plaintiffs prevail on their claims. Courts have repeatedly recognized that ERISA 401(k) cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). It is not unusual for ERISA excessive fee cases to last for a decade. *See Tussey v. ABB, Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case filed in 2007). The potential for protracted litigation supports the Settlement's approval. *See Cullan and Cullan LLC v. M-Qube, Inc.*, 2016 WL 5394684, *7 (D. Neb. Sept. 27, 2016) (approving settlement because it provided "a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal…").

Furthermore, Plaintiffs would incur considerable expenses if this litigation continued. To prove their claims, Plaintiffs would need to depose several Committee members and third-party service providers. These depositions, including the costs of transcripts and travel, would be expensive and potentially reduce the net amount of Class' recovery. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (granting final approval, noting that "early settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways.").

In addition, Plaintiffs would incur expenses related to expert testimony on the following issues: (a) what is a prudent process for an ERISA fiduciary; (b) whether a prudent fiduciary would have allowed for the selection of the Plan's investment options; (c) whether a prudent fiduciary would have allowed for revenue sharing of the type in the Plan; and (d) the amount of damages caused by Defendants' alleged fiduciary breaches, if any.

### 4.    There is No Known Opposition to the Settlement

This factor is more relevant at the final approval stage after Settlement Class members have been notified of the Settlement. *See Cooper*, 2018 WL 3468372, at *4. Plaintiffs will supplement their briefing on this factor at the final approval stage.

### A.    The Settlement Does Not Have Any Substantive or Procedural Deficiencies

A class action settlement is a private contract negotiated between the parties that is "presumptively valid." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (internal quotations omitted). "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion . . . ." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 934. In doing so, courts look for "glaring substantive or procedural deficiencies" and consider whether the "settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys." *Adams*, 2016 WL 7664135,

* 3 (citing *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2009 WL 4782082, *3 (E.D. Mo. Dec. 8, 2009)).

The Settlement does not contain any deficiencies, glaring or otherwise. Substantively, in simplest terms, the Settlement provides Class members with money in exchange for a release. As discussed *supra*, the monetary amount of the Settlement is fair given the strength and risks associated with Plaintiffs' claims. The Settlement's release is limited to the claims that are related to the allegations in the Complaint. Stipulation at ¶ 8.

The Settlement also does not unduly favor Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the alleged losses to their Plan account. While Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award and the amount that Plaintiffs intend to request is in line with awards in similar cases. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (affirming case contribution awards of $10,000 to each of the plaintiffs); *Kruger*, 2016 WL 6769066, at *6 (awarding class representatives $25,000 each for their service).

Likewise, the Settlement does not excessively compensate Class Counsel. The Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court. Stipulation at ¶¶ 20-23. *Adams*, 2016 WL 7664135, at *6 (granting preliminary approval when "class counsel's compensation is not set by the settlement but will be determined by petition to the Court."). The amount of fees that Class Counsel intends to request, 30% of the Settlement, is reasonable and consistent with the awards in other ERISA cases. *Spano v. The Boeing Co*., 2016 WL

3791123, at *2 (S.D. Ill. March 31, 2016) (collecting cases); *Denard v. Transamerica Corp.*, 2016 WL 3554978, at *2 (N.D. Iowa June 24, 2016) (preliminarily approving settlement in ERISA class action where class counsel could seek fees of up to one third of the settlement fund); *Kruger*, 2016 WL 6769066 (approving attorneys' fees of one third of the settlement fund in ERISA 401(k) fiduciary breach class action).

The Parties reached the Settlement in a procedurally fair manner. For this factor, courts consider the stage of proceedings and amount of discovery completed, the opinion of experienced counsel, and whether the settlement was negotiated at arm's length. *See Adams*, 2016 WL 7664135, at *3 (stating, "[C]ourts should consider issues such as whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making…").

Proposed Class Counsel obtained sufficient discovery to enter into the proposed Settlement on a fully informed basis. Following the Court's Opinion and Order denying, in part, Defendants' Motion to Dismiss, the Parties exchanged discovery requests through which Plaintiffs obtained significant documents and information from Defendants. Class Counsel's analysis reflected the input of expert consultants, including with respect to losses suffered by the Plan and the Class Members. Class Counsel was fully aware of this case's strengths and weaknesses when negotiating the Settlement, which supports the Settlement's preliminary approval.

Class Counsel also has in-depth knowledge of the legal framework applicable to this case. Class Counsel have extensive experience prosecuting, settling, and trying ERISA cases on behalf of retirement plan participants, which they used to negotiate the Settlement.

15

*See* Firm Resume of Edelson Lechtzin, attached as Exhibit B to Lechtzin Decl. and Declaration of Mark Gyandoh in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement ("Gyandoh Decl.") at ¶¶ 4, 6-8. It is Class Counsel's opinion that the proposed Settlement is fair and reasonable, a factor which supports the Settlement's approval. *See Netzel v. West Shore Grp.*, 2017 WL 1906955, at *6 (D. Minn. May 8, 2017) (approving settlement where class counsel had "sufficient and extensive experience…").

Because the Settlement was negotiated by experienced counsel, there is a presumption that it was "the product of arm's length negotiations." *Netzel*, 2017 WL 1906955, at *6; *see also Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009) ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable."). The Settlement was reached after many rounds of negotiation at the mediation and in the weeks following the mediation, which allowed Plaintiffs to achieve the Settlement's monetary benefits. Lechtzin Decl. at ¶ 11; *Cullan and Cullan LLC,* 2016 WL 5394684, at *7 (approving settlement when it was negotiated "in several rounds of settlement negotiations").

## VI.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS

For settlement purposes only, Plaintiffs seek certification of a Settlement Class compromised of:

> All persons, except Defendants and their immediate family members, and the Court and Court staff handling this matter, who were participants in or beneficiaries of the Plan at any time between February 14, 2016, through the Date of Preliminary Approval.

Plaintiffs' claims for breach of fiduciary duty under ERISA are well-suited for certification.

Class certification for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure entails a two-step analysis. First, the Court must determine whether Rule 23(a)'s prerequisites are met, which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Next, the court must determine whether Plaintiffs have met the requirements of Rule 23(b). *See Wildman v. Am. Cent. Serv.*, 2017 WL 6045487, at *2. Here, Plaintiffs satisfy the prerequisites of Rule 23(a) as well as the requirements of Rule 23(b)(1).

### A.    Rule 23(a)'s Requirements are Satisfied

### 1.    The Class is Sufficiently Numerous

Numerosity  requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This threshold is easily met, as the Plan had over 12,000 participants by the end of 2016, the first year of the Class Period. (2016 Form 5500 for the Plan); *Speer v. Cerner Corp.*, 2016 WL 5444648, at *5 (W.D. Mo. Sept. 27, 2016) (numerosity met when there were thousands of proposed class members). Accordingly, numerosity is satisfied.

### 2.    Common Questions of Law and Fact Abound

Plaintiffs must also demonstrate the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). Accordingly, "commonality is quite likely to be satisfied" for ERISA breach of fiduciary duty claims, like the ones made here. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 n.11

17

(3d Cir. 2009). Commonality is typically present in ERISA cases because the "appropriate focus … is the conduct of the defendants, not the plaintiffs." *In re Aquila ERISA Litig.,* 237 F.R.D. 202, 209 (W.D. Mo. 2006) (quoting *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 422 (N.D. Okla. 2005)).

In this case, the commonality requirement is readily satisfied because Plaintiffs' allegations arise from the same common nucleus of operative facts, and all members of the proposed Settlement Class would cite the same common evidence to prove their identical claims. Thus, a "classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. 338. The legal and factual questions linking Members of the Settlement Class are unquestionably related to the resolution of the litigation of every Class Member's claims. Common questions of law and fact are presented about whether Defendant breached its fiduciary duties concerning the Plans' investment options, and include:

(a)    Whether Defendants are fiduciaries of the Plan;

(b)    Whether Defendants breached their fiduciary duties by engaging in the conduct described in the FAC;

(c)    Whether the Board Defendants failed to adequately monitor the Fiduciary Investment Committee to ensure the Plan was being managed in compliance with ERISA;

(d)    Whether Defendants' actions proximately caused losses to the Plan and, if so, the appropriate equitable, injunctive and monetary relief to which the Plan is entitled.

These are the core issues in this case and the alleged bases for the harms that unify all Members of the Settlement Class. Defendants' alleged conduct impacted Members of the Settlement Class in precisely the same way. Classes consisting of ERISA plan participants are routinely certified in this and other courts. *See Karg v. Transamerica Corp.*, 2020 WL 3400199, at * 2 (N.D. Iowa Mar. 25, 2020) ("ERISA actions have sufficient commonality when class members share questions of 'whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, [and] whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result.'"); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014) (certifying class because "the questions of whether Defendants breached their fiduciary duties by causing the Plan to select imprudent investment options …, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims[.]").

### 3.    Plaintiffs' Claims are Typical of the Class

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23. The requirement of typicality is met "so long as other class members have claims similar to the named plaintiff," and plaintiffs demonstrate "that there are other members of the class who have the same or similar grievances as the plaintiff.") *Lipari-Williams v. Missouri Gaming Co., LLC*, 339 F.R.D. 515, 526 (W.D. Mo. 2021) (quotations omitted).

Here, Plaintiffs have the same claims for breach of fiduciary duties under ERISA as the other members of the Class. Like other members of the Class, Plaintiffs: (1) seek relief for the same losses, (2) caused by the same alleged breaches of fiduciary duties, (3)

affecting the same Plan. *See Karg*, 2020 WL 3400199, at *3 (typicality is satisfied where plaintiffs and proposed class members "as common investors in the Challenged Funds" alleged "similar harm resulting from defendants' alleged fiduciary breaches" by selecting and retaining such funds); *Rodriguez v. Hy-Vee, Inc.*, No. 4:22-CV-00072-SHL-WPK, 2023 WL 4358705, at *2 (S.D. Iowa Apr. 26, 2023) (typicality satisfied where "[p]laintiffs are typical of other proposed class members with respect to the proposed class's claims and were subject to the same plan recordkeeping fees as other proposed class members."); *Sims v. BB&T Corp.*, 2017 WL 3730552, at *4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments…") (citations omitted).

Thus, the typicality requirement is satisfied.

### 4. Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation "focuses on whether the class representatives have common interests with the members of the class and whether they and their counsel will competently and vigorously pursue the lawsuit." *Bredthauer v. Lundstrom*, No. 4:10-CV-3132, 2012 WL 4904422, at *2 (D. Neb. Oct. 12, 2012) (citing *Paxton v. Union Natl' Bank*, 688 F.2d 552, 562-563 (8th Cir. 1982)). "Rule 23's adequacy determination requires the court to consider: (a) whether the

plaintiffs' interests may be antagonistic to the other members of the class; and (b) whether class counsel are qualified, experienced and able to conduct the litigation." *Id*.

First, Plaintiffs have no interests adverse or "antagonistic" to absent Class Members. Plaintiffs are former participants in the Plan and allegedly suffered a pro rata loss as a result of Defendants' alleged fiduciary breaches with regard to maintaining certain funds in the Plan despite the availability of identical or similar investment options with allegedly lower costs. Like other members of the Class, Plaintiffs seek to maximize the recovery to the Class through this litigation. As such, Plaintiffs' interests are aligned with the interests of the absent Class Members, thereby meeting the first adequacy prong. *Bredthauer v. Lundstrom*, 2012 WL 4904422, at *4 (finding adequacy requirement satisfied, noting that the "representatives' interests are congruent to those of the Class … where plaintiffs and class members all share the common goal of maximizing recovery.")

Second, Class Counsel have no conflicts with the class, are qualified and experienced, and vigorously prosecuted this Action for the Class. The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives and is analyzed under factors set forth in Rule 23(g). *Karg*, 2020 WL 3400199, at *5 (citing Fed. R. Civ. P. 23) ("If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B).")

Rule 23(g) complements the requirement of Rule 23(a) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel. Rule 23(g)(1)(A) instructs the court to consider, among other things: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Rule 23(g) notes a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel, Edelson Lechtzin LLP and Capozzi Adler, satisfy these criteria. These firms' lawyers expended a great deal of time, effort and expense investigating Defendants' practices, and actions prior to and since filing this action. Further, as set forth in the declarations for Plaintiffs' law firms submitted herewith, these firms are highly experienced in ERISA and other complex class action litigation. *See* Exhibit B to Lechtzin Decl. and Gyandoh Decl., ¶¶ 4-8. Additionally, local counsel Gustafson Gluek, PLLC is experienced in ERISA and other complex class action litigation. It is clear from the firms' track records of success that proposed Class Counsel are highly skilled and knowledgeable concerning ERISA law and class action practice.

As can be seen by their commitment to prosecuting this case as well as their track records, Class Counsel have made the investment and have the experience to represent the Class vigorously. Accordingly, the appointment of the proposed Class Counsel under Rule 23(g) is warranted.

## B.    The Settlement Class Satisfies the Requirements of Rule 23(b)

Rule 23(b)(1) states that certification is appropriate if "prosecuting separate actions by or against individual class members would create a risk of:"

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Sacerdote v. New York Univ.*, 2018 WL 840364, *6 (S.D.N.Y. Feb. 13, 2018); *Hochstadt v. Boston Scientific Corp.*, 708 F.Supp.2d 95, 105 (D. Mass. April 27, 2010) ("Rule 23(b)(1) is appropriate in this case because the ERISA Actions involve Defendants' Plan-wide conduct and relief is sought on behalf of the Plan as a whole under ERISA § 502(a)(2)."). "[S]everal courts have held the type of ERISA claims for breach of fiduciary duty raised here are particularly appropriate for Rule 23(b)(1)(A) and (B) certification because of ERISA's distinctive 'representative capacity' and remedial provisions." *Paschal v. Child Dev., Inc.*, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014); *see also Wildman*, 2017 WL 6045487, at *5-6 (same); *Tussey*, 2007 WL 4289694, at *8 (same). Indeed, "ERISA litigation of this nature presents a paradigmatic example

of a (b)(1) class." *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 194 (W.D. Mo. 2009) (citation and quotation marks omitted).[5]

### 1.    Certification Under Rule 23(b)(1) is Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous cases because it is particularly suited for cases alleging the breach of fiduciary obligations to plaintiffs.[6] Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Advisory Committee's Note (1966 Amendment); *see also Clark v. Duke Univ.*, 2018 WL 1801946, at *9 (M.D.N.C. April 13, 2018) (class certified under Rule 23(b)(1)(B) where plaintiffs "established that individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the

---

[5] Plaintiffs only address certification under Rule 23(b)(1) because certification is proper under that subpart of Rule 23, and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1) ..." *Amchem Prods.* 521 U.S. at 615..

[6] *See*, *e.g.*, *Tracey v. Mass. Inst. Tech.*, 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Vellali v. Yale Univ.*, 2019 WL 5204456 (D. Conn. Sept. 24, 2019); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Henderson v. Emory Univ.*, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017); *Bowers v. BB&T Corp.*, 2017 WL 3730552 (M.D.N.C. Aug. 28, 2017); *Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149 (N.D. Cal. July 26, 2017); *Rozo v. Principal Life Ins. Co*., 2017 WL 2292834 (S.D. Iowa May 12, 2017).

Plan and because damages are owed to the Plan as a whole and not individual plaintiffs."). Moreover, because "plaintiffs' claims seek 'plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief.'" *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1081 (D. Minn. 2009) (quoting *Jones*, 257 F.R.D. at 193).

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139-40 (1985). Thus, the proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class. Accordingly, class certification should be granted under Rule 23(b)(1)(B), consistent with the Advisory Committee Notes to Rule 23 and the overwhelming weight of case law.

## 2.    Certification is Also Appropriate Under Section 23(b)(1)(A)

Rule 23(b)(1)(A) "takes in cases where the party is obligated by law to treat the members of the class alike … or where the [defendant] must treat all alike as a matter of practical necessity." *Amchem Prods.*. 521 U.S. at 614  (citation omitted). In discharging their duties to the Plan, Defendants, as fiduciaries, were obligated to treat all participants (and all class members) alike.

However, once a court determines that a class of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies subsection (b)(1)(B) of Rule 23, it is not necessary to consider alternative subsections of Rule 23(b). *See Koch v. Dwyer*, No. 98-CV-5519, 2001 WL 289972, at *5 n.2 (S.D.N.Y. Mar. 23, 2001) ("Since class

certification is proper under Rule 23(b)(1)(B), it need not be determined whether Plaintiff has also satisfied the requirements of Rule 23(b)(1)(A) or 23(b)(2).").

## VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

### A.    The Proposed Notice Plan Meets the Requirements of Due Process

In addition to preliminarily approving the Agreement, the Court must also approve the proposed means of notifying class members. Fed. R. Civ. P. 23(c)(2). The notice of a class action settlement "need only satisfy the broad 'reasonableness' standards imposed by due process." *Petrovic*, 200 F.3d at 1140 (quoting *Grunin*, 513 F.2d at 123). A proposed notice is adequate if it is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950)); *see also Cullan and Cullan LLC*, 2016 WL 5394684, at *7 (approving notice when it was "written in plain English and designed to be read and understood.").

### B.    Description of the Notice Plan

The Settlement Notice plan includes multiple components designed to reach the largest number of Settlement Class members possible. First, the Settlement Class Notice will be sent via U.S. mail to the last known address of each Settlement Class Member by the date and in the matter set by the Court in the Preliminary Approval Order. *See* Preliminary Approval Order. Additionally, by the same date, the Settlement Class Notice, along with other litigation-related documents such as a list of frequently asked questions and the Stipulation with all its Exhibits, will be posted on a Settlement website established

by Plaintiffs' counsel. The Class Notice also provides contact information for Class Counsel.

The Settlement Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e).[7]

## VIII.  CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled at least 120 days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The submitted Proposed Preliminary Approval Order sets forth the proposed schedule of events, which are subject to the Court's approval. For the reasons set forth above, the proposed Settlement meets the standard for preliminary approval under Rule 23.

Dated: April 5, 2024                    Respectfully submitted,

                                        */s/ Daniel C. Hedlund*
                                        **GUSTAFSON GLUEK PLLC**
                                        Daniel E. Gustafson (#202241)
                                        Daniel C. Hedlund (#258337)
                                        David A. Goodwin (#0386715)
                                        Anthony J. Stauber (#0401093)
                                        Canadian Pacific Plaza
                                        120 South Sixth Street, Suite 2600
                                        Minneapolis, MN 55402

---

[7] Indeed, individual notice by First Class mail alone has been recognized as a manner of delivery of notice which comport with due process. *See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*, No., 2009 WL 2137224, at *7 (E.D. Pa. July 16, 2009).

Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com

**EDELSON LECHTZIN LLP**
Eric Lechtzin
Marc H. Edelson
411 S. State Street, Suite N-300
Newtown, PA 18940
Tel: (215) 867-2399
elechtzin@edelson-law.com
medelson@edelson-law.com

**CAPOZZI ADLER, P.C.**
Mark K. Gyandoh, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
markg@capozziadler.com

Donald R. Reavey, Esquire
2933 North Front Street
Harrisburg, PA 17110
Tel: (717) 233-4101
donr@capozziadler.com

***Counsel for Plaintiffs and
the Putative Class***