## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| JASON C. FRITTON, MAREA GIBSON, BRIAN W. MOTZENBEEKER, DAWN DUFF, and CHRISTOPHER SHEARMAN, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>TAYLOR CORPORATION, the BOARD OF DIRECTORS OF TAYLOR CORPORATION, the FIDUCIARY INVESTMENT COMMITTEE, and JOHN DOES 1-30,<br><br>                   Defendants. | Civil Action No. 22-cv-00415<br><br>Judge Jeffrey M. Bryan<br>Mag. Judge Tony N. Leung |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................ 1

II.     LITIGATION AND SETTLEMENT HISTORY ................................... 1

        A.      Description Of The Action ......................................................... 1

        B.      Mediation and Discovery ........................................................... 3

        C.      Preliminary Approval of the Settlement and Notice ..................... 5

        D.      The Proposed Settlement ............................................................ 7

III.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED ............ 8

        A. Legal Standards .......................................................................... 8

        B.      The Settlement Satisfies the Eighth Circuit's Test Underscoring Its
                Fairness, Reasonableness, and Adequacy ..................................... 9

                1.      The merits of the Plaintiff's case weighted against the terms
                        of the settlement ............................................................. 9

                2.      Defendants' financial condition ...................................... 11

                3.      The complexity and expense of further litigation ........... 11

                4.      The lack of opposition to the settlement ......................... 13

IV.     THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED ........... 13

V.      FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
        WARRANTED ........................................................................... 15

        A.      The Proposed Class Meets the Requirements of Rule 23(b)(1) of the
                Federal Rules of Civil Procedure .............................................. 15

        B.      Adequacy of Plaintiffs and Class Counsel ................................. 16

VI.     CONCLUSION .......................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Boley v. Universal Health Servs., Inc.*,
  36 F.4th 124 (3d Cir. 2022) ...................................................................................15

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*,
  281 F.R.D. 347 (D. Minn. 2012) ...........................................................................16

*Cleveland v. Whirlpool Corp.*,
  2022 WL 2256353 (D. Minn. June 23, 2022) ........................................................10

*Huyer v. Wells Fargo & Co.*,
  314 F.R.D. 621 (S.D. Iowa 2016) ............................................................................8

*In re Charter Commc'ns*,
  2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................11

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ........................................................................10

*In re Pork Antitrust Litig.*,
  2024 WL 2060386 (D. Minn. May 8, 2024) ...........................................................16

*In re Resideo Techs., Inc., Sec. Litig.*,
  2022 WL 872909 (D. Minn. Mar. 24, 2022) .................................................8, 10, 14

*In re TikTok, Consumer Privacy Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) .......................................................................6

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d ..................................................................................................................11

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
  2018 WL 2183253 (N.D. Cal. May 11, 2018) ........................................................10

*Krueger v. Ameriprise*,
  2015 WL 4246879 (D. Minn. July 13, 2015) ..........................................................12

*Kruger v. Novant Health, Inc.*,
    2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ........................................................ 12, 13

*Marshall v. Nat'l Football League*,
    787 F.3d 502 (8th Cir. 2015) ................................................................................. 9, 13

*Meller v. Bank of the W.*,
    2018 WL 5305562 (S.D. Iowa Sept. 10, 2018) ........................................................ 6, 13

*Ortega v. Uponor, Inc. (In re Uponor, Inc.*,
    716 F.3d 1057 (8th Cir. 2013) ..................................................................................... 8

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ................................................................................... 13

*Pizarro v. Home Depot, Inc.*,
    2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) .............................................................. 15

*Pollard v. Remington Arms Co.*,
    320 F.R.D. 198 (W.D. Mo. 2017) ................................................................................. 9

*Roeser v. Best Buy, Co., Inc.*
    2015 WL 4094052 (D. Minn. July 7, 2015) ................................................................. 13

*Sacerdote v. New York Univ.*,
    2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ................................................................. 15

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ....................................................................................... 14

*Tibble v. Edison Int'l*,
    2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ............................................................. 12

*Tussey v. ABB, Inc.*,
    2017 WL 6343803 (W.D. Mo. Dec. 12, 2017) ............................................................. 12

*Van Horn v. Trickey*,
    840 F.2d 604 (8th Cir. 1988) ....................................................................................... 9

*Wachala v. Astella US LLC*,
    2022 WL 408108 (N.D. Ill. Feb. 10, 2022) ................................................................. 15

*Zilhaver v. UnitedHealth Grp., Inc.*,
  646 F. Supp. 2d 1075 (D. Minn. 2009) ........................................................................14

**RULES**

Fed. R. Civ. P. 23(e) ........................................................................................................17

Fed. R. Civ. P. 23(g) ........................................................................................................17

Rule 23 ..................................................................................................................16, 17

Rule 23(b)(1) .......................................................................................................................15

Rules 23(a)(4) and 23(g)...................................................................................................17

## I.    INTRODUCTION

On April 24, 2024, the Court preliminarily approved the Settlement in this Action (ECF No. 90), which provides for the creation of a $485,000.00 Settlement Fund. The Preliminary Approval Order also, *inter alia*, conditionally certified a Settlement Class and appointed Plaintiffs as class representatives and Edelson Lechtzin LLP ("Edelson Lechtzin") and Capozzi Adler P.C. ("Capozzi Adler") as co-lead counsel and Gustafson Gluek PLLC ("Gustafson Gluek") as Plaintiffs' local Counsel (collectively, "Class Counsel"). *Id*. Plaintiffs and Class Counsel believe each of these findings in the Preliminary Approval Order should be made final.

This Settlement was achieved after two years of litigation and after vigorous arms-length negotiations between counsel who are experienced in ERISA class actions and under the auspices of Robert A. Meyer of JAMS, a private mediator with extensive experience mediating ERISA actions.[1]  Plaintiffs respectfully request this Court to enter the proposed Final Approval Order and Final Judgment approving the Settlement.

## II.    LITIGATION AND SETTLEMENT HISTORY

### A.    Description of the Action

Prior to initiating this action Class Counsel devoted substantial time to investigating this matter. Declaration of Eric Lechtzin in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement ("Lechtzin Decl."), at ¶ 5. Plaintiffs commenced this action by filing an initial complaint on February 14, 2022. (ECF No. 1.) Plaintiffs alleged, *inter*

---

[1] Defendants do not oppose this Motion for purposes of facilitating the Settlement.

*alia*, that throughout the Class Period (February 14, 2016 through April 24, 2024, *i.e.*, the date of Preliminary Approval), Defendants selected a slate of investment options for the Plan that were imprudent due to their high fees, when lower-cost share classes of identical funds – differing only in cost – were available to the Plan. ¶¶ 82-96, 100-109. Plaintiffs alleged that if there had been a prudent process in place, these funds would have been replaced with the less expensive share classes as early as the beginning of the Class Period. *Id*. Plaintiffs also alleged that Defendants failed to switch from mutual fund versions of the Plan's suite of T. Rowe Price Target-Date Funds ("TDFs") to identical lower-cost CIT versions of such investments. ¶¶ 95-99. Plaintiffs also alleged Defendants imprudently retained the underperforming Victory Small Cap Value Fund. ¶¶ 110-113. In addition, Plaintiffs alleged the Plan suffered losses due to unreasonably high recordkeeping fees, which Plaintiffs alleged averaged $83.37 per participant per year, when the Plan could have negotiated recordkeeping fees of no more than $20 to $35 per participant. ¶¶ 60-81.

After briefing on Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (ECF Nos. 21, 33-34, 39), the Court issued an Opinion and Order granting Defendants' Motion to Dismiss on December 12, 2022. (ECF No. 49). The Court found that Plaintiffs plausibly alleged Article III injury only in connection with their excessive-recordkeeping-expenses claim, but that the recordkeeping claim failed on its merits.

The Court gave Plaintiffs an opportunity to amend their complaint, and on January 11, 2023, Plaintiffs filed a First Amended Class Action Complaint ("FAC"). (ECF No. 50.) Thereafter, Defendants filed a Motion to Dismiss the FAC on January 25, 2023, which was fully briefed. (ECF Nos. 54-56, 58-59.)

2

On August 21, 2023, the Court issued an Opinion and Order granting, in part, and denying, in part, Defendants' Motion to Dismiss the FAC. (ECF No. 66.) The Court found that Plaintiffs plausibly alleged a claim for breach of the fiduciary duty of prudence based on Defendants' selection of more expensive retail share classes instead of the lowest-cost institutional share classes for certain funds. *Id*. The Court also denied Defendants' motion with respect to Plaintiffs' derivative failure to monitor claim. *Id*. The Court dismissed Plaintiffs' claims that Defendants imprudently failed to consider the lower-cost CIT versions of the TDFs and allegations regarding imprudent selection and retention of funds with excessive management fees. *Id*. The Court also dismissed Plaintiffs' claim that Defendants imprudently retained the underperforming Victory Small Cap Value Fund. *Id*. Plaintiffs' recordkeeping claim was dismissed because the FAC did not provide sufficient allegations that the fees were unreasonably high. *Id*. Finally, the Court dismissed without prejudice Plaintiffs' claim that Defendants breached their duty of loyalty. *Id*. Defendants Answered the FAC on September 5, 2023. (ECF No. 67.)

The Court entered a Pretrial Scheduling Order on October 26, 2023. (ECF No. 71.) On October 26, 2023, the Court held a pretrial conference and discussed with the Parties, among other matters, the possibility of settlement. On October 26, 2023, the Court ordered the Parties to complete mediation with Robert A. Meyer by February 2024. (ECF No. 71.)

### B. Mediation and Discovery

In October 2023, the Parties exchanged Rule 26(a)(1) disclosures. Lechtzin Decl. at ¶ 8. On November 1, 2023, Plaintiffs served their first sets of document requests and interrogatories on Defendants, and Defendants responded to both on December 1, 2023.

*Id.* On December 4, 2023, Defendants served their first sets of document requests and interrogatories on each named Plaintiff, and Plaintiffs timely responded to each on January 17, 2024. *Id.* at ¶ 9. Defendants provided Plaintiffs with extensive relevant documentation, including meeting minutes and materials considered by the Fiduciary Investment Committee. *Id.* at ¶ 10. Plaintiffs retained an expert who calculated a damage estimate based on Plaintiffs' claims in the case. *Id.* at ¶ 11.

On January 30, 2024, the Parties participated in a full-day mediation before Robert A. Meyer. Lechtzin Decl. at ¶ 12. After reviewing all relevant information, Plaintiffs determined that Defendants' failure to utilize the lowest-cost share classes available to the Plan resulted in damages estimated at $5,108,683.[2] *Id.* at ¶ 14.

Defendants disagreed with Plaintiffs' calculation of damages and defended their decision to offer investment options with revenue sharing arrangements, which had higher gross expense ratios than share classes without revenue sharing, because – Defendants contended – all revenue sharing payments were credited back to the Plan and used to pay for recordkeeping and other administrative services, and any excess revenue sharing was distributed back to participants. Lechtzin Decl. at ¶ 16. Based on these credits, Defendants argued that the net expense ratios of the funds with revenue sharing was actually lower than the least expensive institutional share class that did not provide revenue sharing.

---

[2] Plaintiffs also estimated – using a $50 per participant recordkeeping and administration fee as a reasonable rate, that losses to the Plan through 2022 were $2,148,042 before prejudgment was added. However, as discussed above, this claim was dismissed and therefore had minimal value. *Id.* at ¶ 15.

Although the Parties did not reach a settlement at the mediation, negotiations facilitated by Mr. Meyer continued during the ensuing weeks and, on February 28, 2024, the Parties reached an agreement in principle to resolve Plaintiffs' claims and those of the Class. Thereafter, the Parties negotiated the detailed terms of the Stipulation and exhibits thereto, for which Plaintiffs now seek final approval. *Id*. at ¶ 13.

### C.     Preliminary Approval of The Settlement and Notice

Plaintiffs filed their Motion for Preliminary Approval on April 5, 2024 (ECF No. 83), which the Court granted on April 24, 2024. (ECF No. 90). The Court preliminarily found that "(a) the proposed Settlement resulted from arm's-length negotiations; (b) the Stipulation was executed only after Class Counsel had researched and investigated multiple legal and factual issues pertaining to Plaintiffs' claims; (c) there is a genuine controversy between the Parties involving Defendants' compliance with the fiduciary requirements of ERISA; (d) the Settlement appear[ed] on its face to be fair, reasonable, and adequate; and (e) the Settlement, evidenced by the Stipulation, is sufficiently fair, reasonable, and adequate to warrant sending notice of the Action and the Settlement to the Settlement Class."

On June 7, 2024, short form notices were printed and mailed to the 25,834 Settlement Class Members.[3] *See* Declaration of Settlement Administrator in Support of

---

[3] Settlement Class Members who had a non-active account as of the date of the preliminary approval order received a Non-Active Account Member Election Form ("Election Form") with the short form notice. While the Settlement Administrator originally mailed a subset of active account Settlement Class Members two class settlement notices – one with the Election Form and one without an Election Form, on June 25, 2024, the Settlement

Plaintiffs' Motion for Final Approval of Class Action Settlement, signed by Jeffrey Mitchell ("Mitchell Decl."). Analytics updated the Settlement Class member address information using forwarding addresses provided by the U.S. Postal Service, or, when none was provided, obtaining new addresses by conducting a "skip trace." Mitchell Decl., ¶¶ 13-14. As of July 1, 2024, 462 out of 25,834 Notices were undeliverable (roughly 1.79%). *Id.* at ¶ 15.[4] Additionally, the long-form notice was posted on a dedicated website, along with Settlement documents.

The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses.

The content of the notice "fully satisfied the requirements of Rule 23 and due process" because it "was reasonably calculated to advise class members of the litigation, their right to object to the settlement, and their right to appear at the final approval hearing." *Meller v. Bank of the W.*, 2018 WL 5305562, at *7 (S.D. Iowa Sept. 10, 2018), *report and recommendation adopted*, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018).

---

Administrator mailed a corrective notice, explaining that the Election Form was sent to them in error. See Exhibit 3 to Mitchell Declaration.

[4] A 98.21% delivery success rate is a particularly good result considering that, "[a]ccording to the Federal Judicial Center, notice to at least seventy percent of the class generally meets this standard." *In re TikTok, Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 927-28 (N.D. Ill. 2022) (citing Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010)).

### D.    The Proposed Settlement

The Settlement establishes a Settlement Amount of $485,000 as compensation to the Settlement Class. As provided under the terms of the Stipulation, within thirty (30) calendar days after the Date of Preliminary Approval, Defendants and/or their insurer delivered $30,000 of the Settlement Amount to a non-interest-bearing FDIC-insured account identified by Class Counsel to cover the initial Settlement Administrative Expenses and the costs of sending Notice to the Class. (Stipulation ¶ 12.)

Within thirty (30) calendar days after Complete Settlement Approval such that the Settlement has become Final, Defendants and/or their insurance carrier shall deliver the remaining balance ($455,000) of the Settlement Amount to the Settlement Account. (*Id*.) The Settlement Fund will be used to pay Settlement Administration Expenses, Class Counsel's fee and expense award, and the Plaintiffs' case contribution awards if awarded by the Court. (*Id*. ¶ 14.) The Net Settlement Fund consists of the Settlement Fund less these amounts and less the payment of any taxes or other charges allowed against the Settlement Fund. (*Id*.) The Settlement Administrator will be responsible for calculating the amounts payable to Settlement Class Members pursuant to the Plan of Allocation based on data to be provided by the Plan's Recordkeepers. (*Id*. ¶ 26). The Stipulation does not provide for any "reversion" of the Settlement Fund to Defendants or any of their affiliates.

Defendants have selected Fiduciary Counselors as the Independent Fiduciary to approve and authorize the settlement on behalf of the Plan and determine if the Settlement is reasonable and fair. (*Id*. ¶¶ 19, 30(b)). The fees and expenses of the Independent Fiduciary, and employees, attorneys, consultants, and advisors retained or employed by the

Independent Fiduciary, not to exceed $15,000, are part of Settlement Administration Expenses and will be paid from the Settlement Fund. (*Id*. ¶ 19.) However, if for any reason the Independent Fiduciary Fees Amount exceeds $15,000, one half (1/2) of the excess will be paid from the Settlement Fund, and one half (1/2) of the excess will be paid by Defendants. (*Id*.)

> The Settlement Class is defined as:
>
> All persons, except Defendants and their immediate family members, and the Court and Court staff handling this matter, who were participants in or beneficiaries of the Plan at any time between February 14, 2016, and the Date of Preliminary Approval.
>
> The "Class Period" is February 14, 2016, through the date of the Order.

Preliminary Approval Order, ECF No. 90.

## III.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.   Legal Standards

When assessing whether a proposed settlement "is fair, reasonable, and adequate", Courts within the Eighth Circuit evaluate four factors: "(1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *In re Resideo Techs., Inc., Sec. Litig.*, 2022 WL 872909, at *2 (D. Minn. Mar. 24, 2022) (citing *Ortega v. Uponor, Inc.* (*In re Uponor, Inc.*), 716 F.3d 1057, 1063 (8th Cir. 2013)). "Settlement agreements are generally encouraged, and are presumptively valid." *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 626 (S.D. Iowa 2016) (citing *In re Uponor, Inc.*, 716 at 1063). This presumption is especially true in cases like this, "where

the parties settled the case with the aid of an experienced mediator." *Id.* A close look at Eighth Circuit factors supports final approval of the Settlement.

**B.    The Settlement Satisfies the Eighth Circuit's Test Underscoring Its Fairness, Reasonableness, and Adequacy**

**1.    The Merits of the Plaintiff's Case Weighed Against the Terms of the Settlement**

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). However, "[a] district court, in evaluating the strength of the plaintiffs' case, 'need not undertake the type of detailed investigation that trying the case would involve.'" *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 198 (W.D. Mo. 2017) (quoting *Van Horn*, 840 F.2d at 607). Here, the Settlement is fair, reasonable and adequate when balancing Plaintiffs' strengths against the risks and costs of continued litigation.

Following dismissal of several of Plaintiffs' claims, Class Counsel determined maximum potential damages to the Plan of approximately $5.1 million for their surviving claims. Lechtzin Decl. at ¶ 14. But this was the best-case scenario, which did not adjust for credits to the Plan from revenue sharing and it assumed the trier of fact would agree with Plaintiffs' expert's analysis of damages. *Id*. If the trier of fact were to agree with Defendants' analysis of damages, then damages could be zero dollars. *Id*.

In that light, the proposed Settlement Amount of $485,000.00 is an appropriate discount to avoid the costs of continued litigation and potential risk for Plaintiffs to receive

less or no damages. This amounts to roughly a little under 10% (using Plaintiffs' calculations) or more than 100% (if Defendants were successful), of Plaintiffs' estimated $5.1 million of potential best-case damages. This percentage of recovery is in accord with the typical percentage district courts have approved. *See*, *e.g.*, *In re Resideo Techs., Inc., Sec. Litig.*, 2022 WL 872909, at *3 ("The Settlement amount of $55 million represents approximately 10 percent of the *maximum* recoverable damages Plaintiffs expect could be established at trial, which is similar to recovery amounts that courts in this District have approved."); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages").

Importantly, "a district court must weigh the strength of a plaintiff's case on the merits in light of the litigation risks and substantial expense and delay of continued litigation without any guarantee of success to class members against the immediate and substantial benefits to the class." *Cleveland v. Whirlpool Corp.*, 2022 WL 2256353, at *5 (D. Minn. June 23, 2022). As discussed in factor three, *infra*, ERISA breach of fiduciary duty cases such as this involve risky, lengthy, and costly litigation. *See*, *e.g.*, *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 496–97 (E.D. Mich. 2008) ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law.") Moreover, Defendants would likely argue that the Plan did not suffer any loss because the Plan offered the lowest net cost share class for the participants, considering the Plan's use of revenue sharing as the

method to pay Plan fees. Thus, Plaintiffs faced a risk that they would be unable to establish the Defendants' liability, and, if able to do so, they faced the further risk that a trier of fact would find no damages.

In light of these risks, Plaintiffs and their counsel believe the Settlement represents a favorable outcome for the Settlement Class. The Settlement will avoid the cost and expense of continued litigation at the risk of less or no recovery at all.

### 2.    Defendants' Financial Condition

Taylor Corporation is a large company with enough assets to pay the Settlement. Lechtzin Decl. at ¶ 18. Accordingly, Plaintiffs did not discount the amount of the Settlement based on Defendants' ability to pay. *Id*. This factor supports approval of the Settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 933 (affirming approval of settlement because "there is no indication that (defendant's) financial condition would prevent it from raising the settlement amount.").

### 3.    The Complexity and Expense of Further Litigation

"The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement should be [approved]." *In re Charter Commc'ns*, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005).

Without a settlement, the action would proceed with merits discovery, expert discovery, class certification and summary judgment motions, as well as a trial and a possible appeal. Each stage would take time and, importantly, present additional risks that the Plaintiffs and Class members would receive less than the $485,000.00 that they are now being offered. The Settlement provides money to the Class now, instead of years in the

future if the Plaintiffs prevail on their claims. Courts have repeatedly recognized that ERISA 401(k) cases "often lead [] to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). It is not unusual for ERISA excessive fee cases to last for a decade. *See Tussey v. ABB, Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings on amount of damages more than 10 years after the suit was filed); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in a case filed in 2007).

Furthermore, Plaintiffs would incur considerable expenses if this litigation continued. To prove their claims, Plaintiffs would need to depose several Committee members and representatives from third-party service providers. These depositions, including the costs of transcripts and travel, would be expensive and potentially reduce the net amount of Class' recovery. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (granting final approval, noting that "early settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways.").

In addition, Plaintiffs would incur expenses related to expert testimony on the following issues: (a) what is a prudent process for an ERISA fiduciary; (b) whether a prudent fiduciary would have allowed for the selection of the Plan's investment options; (c) whether a prudent fiduciary would have allowed for revenue sharing of the type in the Plan; and (d) the amount of damages caused by Defendants' alleged fiduciary breaches, if any.

Accordingly, this stage of settlement is ideal because it "allows a class to achieve substantial savings and be able to invest those savings immediately – enjoying years' worth

of returns that would not otherwise be available." *Kruger*, 2016 WL 6769066, *5. This factor weighs in favor of approval because the Settlement Agreement guarantees immediate relief for the Class, including non-monetary relief, and avoids serious risks of further proceedings shrinking, eliminating, or prolonging relief.

### 4.    The Lack of Opposition to the Settlement

No objections have been filed with the Court as of today's date. Hence, "[t]he absence of any opposition to the settlement strongly supports final approval." *Meller,* 2018 WL 5305562, at *7 (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999)); *see also Marshall*, 787 F.3d at 513 ("We have previously approved class-action settlements even when almost half the class objected to it."); *Roeser*, 2015 WL 4094052, at *7 ("Such minimal opposition to the settlement weighs in favor of finding it fair, reasonable, and adequate."). Accordingly, all Eighth Circuit factors are satisfied.

## IV.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED[5]

"'A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'"

---

[5] The Election Form sent to Non-Active Account Members included one slight deviation from the proposed Plan of Allocation. While the Proposed Plan of Allocation provided that "The Election Form shall provide the Non-Active Account Members with the option to select a distribution either by check or tax deferred deposit into an account of their choosing. In the event no election is made by a Non-Active Account Member, or the Election Form is not returned to the Settlement Administrator by the deadline imposed in the Election Form, the default payment method shall be by check," the Election Form sent to Non-Active Members provided the option to select a check made payable directly to such Non-Active Members or a check made payable to an account of their choosing. This change was intended to avoid confusion and potential errors related to directly depositing money into an account of their choosing.

*In re Resideo Techs., Inc., Sec. Litig.*, 2022 WL 872909, at *4 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011)). Here, the proposed Plan of Allocation (attached to the Agreement as Exhibit 4), is premised on calculating a Settlement Class member's distribution on a *pro rata* basis based on account balances, a proxy for the alleged losses.[6] Further, current participants will receive their share of the Settlement Fund through a distribution to their Plan account. *Id.* at Section E.

Where the Settlement Fund "proceeds will be distributed among class members in proportion to their calculated losses," courts have found this distribution plan to be "fair and reasonable." *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F. Supp. 2d 1075, 1080 (D. Minn. 2009). Accordingly, the Plan of Allocation merits approval.

---

[6] The Plan of Allocation provides that each Settlement Class Member's share of the Net Settlement Fund will be calculated as follows:

    1. Calculate the sum of each Class Member's account balances for each year of the Class Period. This amount shall be that Class Member's "Balance."
    2. Sum the Balance for all Class Members.
    3. Allocate each Class Member a share of the Net Settlement Amount in proportion to the sum of that Class Member's Balance as compared to the sum of the Balance for all Class Members, *i.e.*, where the numerator is the Class Member's Balance and the denominator is the sum of all Class Members' Balances.

The amounts resulting from this initial calculation shall be known as the Preliminary Entitlement Amount. Class Members who are entitled to a distribution of less than $10 (the "De Minimis Amount") will not receive a distribution from the Net Settlement Fund. The Settlement Administrator shall proportionately increase all Class Members' awards that are greater than the De Minimis Amount by the sum total of the awards falling below the De Minimis Amount. The resulting calculation shall be the "Final Entitlement Amount" for each Settlement Class Member. The sum of the Final Entitlement Amount for each remaining Settlement Class Member must equal the dollar amount of the Net Settlement Fund.

## V.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.     The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

Before entering the Preliminary Approval Order, this Court examined the record and conditionally certified the Settlement Class pursuant to FED. R. CIV. P. 23(b)(1). *See* Preliminary Approval Order. Nothing has changed since the entry of the Preliminary Approval Order that would compel the Court to now reach a different conclusion with respect to the final certification of the Settlement Class. Indeed, courts across the country have determined breach of fiduciary duty claims under ERISA analogous to those at issue in this action are uniquely appropriate for class treatment.[7] To avoid unnecessary repetition, Plaintiffs incorporate their arguments from their memorandum in support of preliminary approval (ECF 85; pp. 16-26) and request the Court make the same findings it did in preliminarily certifying a settlement class and certify the following Class for settlement purposes only:

> All persons, except Defendants and their immediate family members, and the Court and Court staff handling this matter, who were participants in or beneficiaries of the Plan at any time between February 14, 2016, and the Date of Preliminary Approval.

The "Class Period" is February 14, 2016, through April 24, 2024. Preliminary Approval Order, ECF No. 90.

---

[7] *See, e.g.*, *Sacerdote v. New York Univ*., 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018) ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *Wachala v. Astella US LLC*, 2022 WL 408108, at * 1 (N.D. Ill. Feb. 10, 2022) (certifying claims brought pursuant to ERISA § 502(a)(2)); *Nunez v. B. Braun Medical, Inc.*, No. 5:20-cv-04195 (E.D. Pa. June 30, 2022) (same); *Stengl v. L3Harris Technologies*, No. 6:22-cv-572 (M.D. Fla. June 5, 2023) (same); *Pizarro v. Home Depot, Inc*., 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) (same); *Boley v. Universal Health Servs., Inc*., 36 F.4th 124 (3d Cir. 2022) (same).

**B.      Adequacy of Plaintiffs and Class Counsel**

Under Rule 23, certification of a class requires the Court determine both Named Plaintiffs and Class Counsel's adequacy. "To demonstrate adequacy of representation, a plaintiff must show that '(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge.'" *In re Pork Antitrust Litig.*, 2024 WL 2060386, at *17 (D. Minn. May 8, 2024) (quoting *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012)). Here both prongs of the adequacy test are met.  In its Preliminary Approval Order, the Court found both Plaintiffs and Class Counsel to be adequate. *See* Preliminary Approval Order.  In connection with the instant motion for final approval, each of the Plaintiffs have submitted declarations and Class Counsel has also submitted a declaration to attest to their adequacy.   Plaintiffs dedicated substantial time to the prosecution of this action and have no interests that would be antagonistic to the Class. *See* Declarations of Plaintiffs.

Plaintiffs also retained attorneys who are highly qualified, experienced, and able to litigate this matter.  As set forth in the declarations for Plaintiffs' law firms submitted herewith, these firms are highly experienced in ERISA class actions and other complex litigation. *See* Exhibit A to Lechtzin Decl. and Gyandoh Decl., ¶¶ 3-12. Additionally, local counsel Gustafson Gluek, PLLC is highly experienced in complex class action litigation. It is clear from the firms' track records of success that proposed Class Counsel are highly skilled and knowledgeable concerning ERISA law and class action practice.

16

Throughout the litigation, Class Counsel has used its experience and access to resources to investigate and litigate Plaintiffs' claims, which ultimately led to the Settlement in this Action. Class Counsel, with its expansive experience in ERISA class actions, recommend this Settlement as the best resolution for the Settlement Class. The retention of highly qualified counsel, coupled with the alignment of interests between Plaintiffs and the Settlement Class Members, satisfies the requirements of Rules 23(a)(4) and 23(g).

## VI.    CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23. Accordingly, Plaintiffs seek an Order: (1) approving the Class Action Settlement Agreement under FED. R. CIV. P. 23(e); (2) certifying the above-defined Settlement Class; (3) appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel under Fed. R. Civ. P. 23(g); (4) finding the manner in which the Settlement Class was notified of the Settlement was the best practicable under the circumstances and fair and adequate; and (5) approving the Plan of Allocation.

Dated: July 9, 2024                        Respectfully submitted,

*/s/ Daniel C. Hedlund*
**GUSTAFSON GLUEK PLLC**
Daniel E. Gustafson (#202241)
Daniel C. Hedlund (#258337)
David A. Goodwin (#0386715)
Anthony J. Stauber (#0401093)
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402

17

Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com

**EDELSON LECHTZIN LLP**
Eric Lechtzin
Marc H. Edelson
411 S. State Street, Suite N-300
Newtown, PA 18940
Tel: (215) 867-2399
elechtzin@edelson-law.com
medelson@edelson-law.com

**CAPOZZI ADLER, P.C.**
Mark K. Gyandoh, Esquire
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
markg@capozziadler.com

Donald R. Reavey, Esquire
2933 North Front Street
Harrisburg, PA 17110
Tel: (717) 233-4101
donr@capozziadler.com

*Counsel for Plaintiffs and
the Putative Class*

18